**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cr-0032 |
| ) | |
| MICHAEL SAMUELS, ) | |
| ) | |
| Defendant. ) | |

**ATTORNEYS:**

**DAVID WHITE, ASSISTANT U.S. ATTORNEY**
ST THOMAS, U.S. VIRGIN ISLANDS
  *FOR PLAINTIFF UNITED STATES OF AMERICA*

**MICHAEL SAMUELS,** *PRO SE*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

**BEFORE THE COURT** is the Magistrate Judge's August 16, 2018 Report and Recommendation ("Report") making certain recommendations with regards to several 28 U.S.C. § 2255 filings, *inter alia,* by Defendant Michael Samuels ("Samuels"). (ECF No. 265.) Samuels filed an objection to the Report on November 9, 2018. (ECF No. 270). The Government did not respond to Samuels' objections.

For the reasons stated below, the Court will adopt the Report and will deny Samuels' relief under section 2255. The Court will also deny Samuels' motions seeking appointment of counsel.

### I. BACKGROUND

Following a jury trial, Samuel was convicted of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine. The Court sentenced Samuel on May 27, 2014, to 121 months incarceration with five years of supervised release. (ECF No. 198.) On March 11, 2016, the U.S. Court of Appeals for the Third Circuit affirmed the conviction and sentence. *See United States v. Marrero*, 643 F. App'x 233 (3d Cir. 2016).

Proceeding *pro se*, Samuels filed the instant motion alleging ineffective assistance of counsel based on counsel's failure to: (Ground 1) offer a voice analysis expert to impeach the Government's witness Thomas Bruce ("Bruce"); (Ground 2) call Samuels's mother and sister to expose a juror bias; and (Ground 3) seek a minor role reduction under U.S.S.G. § 3B1.2. (ECF No. 225.) After the Government filed its motion to dismiss (ECF No. 231), Samuels asserted additional grounds, namely, that his counsel failed to: (Ground 4) explain and advise him of the minimum 10-year statutory sentence exposure before deciding to reject the Government's plea offer; and (Ground 5) to advise him of the safety valve provision and to commence discussions with the Government to establish a record of his eligibility for a safety valve reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. (ECF No. 236.) Thereafter, on July 24, 2017, Samuels made a motion for leave to amend, asserting actual innocence. (ECF Nos. 241, 243.)

The Magistrate Judge recommended granting Samuels' motion to provide supplemental authority. The Magistrate Judge also recommended granting the Government's motion to dismiss Samuels' section 255 petition as well as denying all other motions. Samuels objected to the Magistrate Judge's determination of his ineffective assistance claim based on Ground 1, introduction of analyst and impeachment of the Government's witness (ECF No. 270 at 3-5), Ground 2, juror bias (*Id.* at 5-7), Ground 3, minor role reduction (*Id.* at 2-3), Ground 5, safety valve reduction (ECF No. 270 at 1-2), and several issues that the Magistrate Judge did not address, including "other claims of juror bias" (*Id.* at 7).

## II. LEGAL STANDARD

Litigants may make specific written objections to a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). When a party makes a timely objection to the report and recommendation, the district court makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C). In the absence of objections, the court's review is limited to "far more deferential standard of 'plain error.'" *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006).

A prisoner in federal custody claiming the right to be released on the ground that his sentence was imposed in violation of the Constitution or laws of the United States "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255 (a). "It is well established that '[c]laims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding under 28 U.S.C. § 2255.'" *United States v. Hurtado*, 65 F. App'x 401 (3d Cir. 2003).

To establish an ineffective assistance of counsel claim under § 2255, the movant must: (1) prove his counsel's representation was deficient; and (2) demonstrate that the representation "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the representation to be deemed deficient, the Court must find that the performance fell below an objectively reasonable standard of representation. *Id.* at 688-89. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 668. In determining whether counsel's acts or omissions were "outside the wide range of professionally competent assistance" courts must consider the facts and circumstances of the particular case. *Id.* at 690. To demonstrate prejudice under *Strickland*, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court may address the *Strickland* elements in any order. *Id.* at 670. Finally, the movant bears the burden of establishing each of the two prongs by a preponderance of the evidence. *United States v. Serrano*, 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)).

### III. DISCUSSION

#### A. *Unobjected Parts of the Report and Recommendation*

Samuels did not object to parts of the Report recommending: (1) denying the motion for leave to amend and restate, ECF No. 241, and amended motion, ECF No. 243, insofar as he seeks to add an additional claim of actual innocence; (2) denying the motions to appoint counsel, ECF Nos. 244, 246, and 247; and (3) granting the motion to provide supplemental authority, ECF No. 245. Samuels also did not object to the part of the Report recommending denial of Ground 4 of his ineffective assistance claim based on counsel's failure to discuss

and advise him of a 10-year minimum sentence exposure during plea negotiations. Although Samuels asserted in his objections that the Magistrate Judge failed to address several issues, including "other claims of juror bias" (ECF No. 270 at 7), he did not identify those issues or "other claims of juror bias."

The Court's review of the ineffective assistance of counsel grounds asserted by Samuels and the Report and Recommendation indicates that the Magistrate Judge addressed all the grounds asserted, including juror bias. Upon review of the unobjected parts of the Report and Recommendation, the Court finds no clear error. Accordingly, the Court will adopt the Report's recommendations respecting the motions at ECF Nos. 241, 243, 244, 245, 246, and 247.

### B. *Objected Parts of the Report and Recommendation*

Samuels objected to the Magistrate Judge's findings concerning Grounds 1, 2, 3 and 5 of his ineffective assistance of counsel claim asserting that the Magistrate Judge: (Ground 1) "Introduction of Analyst/Impeachment of Bruce," misread its own case and found "that Counsel had a strategy," but that finding is contradicted by the record, (ECF No. 270 at 4); (Ground 2) "Juror Bias," erroneously found that Samuels "does not identify any alleged false answer provided by [Juror 49] . . . nor does he explain how any issues between the juror and his sister resulted in prejudice to him," (*id.* at 5); (Ground 3) minor role reduction, "seems to assume that any objection, no matter how inadequate or perfunctory, and even if the issue is not carried through to completion, satisfies Counsel's obligation to advance his client's interest," which "is not the correct standard to review Counsel," (*id.* at 3); and (Ground 5) safety valve, "failed to consider the change in guideline the safety valve would give and considered it in isolation," (*id.* at 2). The Court will address *de novo* Grounds 1, 2, 3 and 5 of Samuels' ineffective assistance of counsel claim that are the subject to his objections.

### 1. **Ground 1: Failure to offer a voice analysis expert to impeach the Government's witness and to Investigate the Matter**

Samuels asserts that counsel "was ineffective for not presenting expert voice analysis to impeach Bruce's sole interpretation and account of who was speaking in government's Exhibit 4" and for failing to "investigate this matter," since testimony proved that "Brown Sugar" was the owner or subscriber of the phone number "0827" (ECF No. 226 at 2-3), and

counsel openly admitted at sentencing that he was ineffective on this matter. (ECF No. 270 at 3). The Government asserts that "decisions whether to engage experts are tactical and do no not give rise to habeas claims," and counsel cross-examined the witness.[1] (ECF No. 252 at 2.)

Under the Sixth Amendment, counsel has "a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options." *Strickland*, 466 U.S. at 680.

At the sentencing hearing, counsel stated the following:

> Based on evidence that was presented to the Court, he was only involved, allegedly, in the October transaction. And the evidence is the only person he knew, had any contact with, was Mr. Bruce. And during the trial it was, either on, due to my inadequate representation of the defendant, not realizing I should have carefully and clearly checked the phone record, the phone record wasn't traceable to him. The phone record was traceable to a Brown Sugar. That's the name of the person who, who the phone was registered to. And it is my position that the only evidence we have is just on that one occasion, Mr. Samuel[s] just happened to answer the phone.

(ECF No. 204 at 27-28). Although counsel stated that he "should have carefully and clearly checked the phone record," which would show that the telephone was registered to "Brown Sugar," the trial record shows that during counsel's cross-examination of the Drug Enforcement Agency's Special Agent Michael Grossman ("Grossman"), counsel successfully elicited Grossman's testimony that the records "show a subscriber of Brown Sugar for that telephone. It doesn't say Michael Samuels." (ECF No. 173-1 at 286.) To the extent that counsel did not "carefully and clearly checked the phone record," that omission was cured by counsel's cross-examination of Grossman. Moreover, there is no prejudice to Samuels from counsel's failure to "carefully and clearly check the phone record" considering Grossman's testimony that the telephone was registered to "Brown Sugar" and not Samuels. (ECF No.

---

[1] The Government also asserts that "Issue One in Samuel's appellate brief argues the very issue that Samuels now challenges" and he "cannot relitigate the very issue that Samuels now challenges." (ECF No. 252 at 2.) The Government' assertion is not supported by the record. Issue One on Samuels's appeal involved the Sixth Amendment right to confrontation, namely, "WHETHER APPELLEE'S WILFUL FAILURE TO TIMELY PRODUCE TRANSCRIPT OF CRUCIAL WITNESS AGAINST APPELLANT MICHAEL SAMUEL AND NONDISCLOSURE OF BASIS FOR NEEDED CORRECTIONS IN WITNESS'S TRANSCRIPT VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESS?" Michael Samuel's Appellate Brief*,* 2014 WL 5427540 at *2.

173-1 at 286, 280.) During Bruce's cross-examination, counsel successfully impeached him on several occasions, including in connection with Bruce's prior inconsistent statement, (ECF No. 173-1 at 85-87), and the content of the telephone conversation that Bruce testified he had with Samuels, (ECF No. 173-1 at 87-89).

Bruce testified that Samuels is his wife's brother, and he has known him for about twelve years. (ECF No. 173 at 158-159.) In light of these facts, Samuels failed to show that counsel's decision not to offer a voice expert in connection with the recorded telephone conversations between Bruce and Samuels, was not strategic. Even if Bruce offered a voice expert testimony and that testimony showed that none of the voices on the recordings of Bruce's telephone conversations belongs to Samuels, the jury was free to find Bruce's testimony more credible than the expert's, given the nature and length of the relationship between Bruce and Samuels. The jury heard Bruce testify repeatedly on cross-examination by co-defendant's counsel that he acted deceitfully and untruthfully in connection with the events in this case (ECF No. 173-1 at 20-29); yet, despite Bruce's admissions of deceit and untruthfulness, the jury credited his testimony. The evidence against Samuels was not weak. *United States v. Marrero*, 643 F. App'x 233, 235 (3d Cir. 2016) (finding on Defendants' appeal in this case that "neither defendant contends Bruce's trial testimony was contrary to his grand jury testimony, and the evidence against each defendant was otherwise overwhelming"); *Strickland*, 466 U.S. at 696 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"); *see Jordan v. Superintendent Coal Twp. SCI*, 841 F. App'x 469, 474 (3d Cir. 2021) (finding that, where the evidence against the movant "was far from weak," he did not meet "his burden of showing that there was a substantial probability that the outcome would have been different had trial counsel called Tracy Jr.," to corroborate his alibi).

Considering the totality of the circumstances in this case, the Court finds that Samuels failed to rebut the presumption that counsel rendered effective assistance based on Ground 1and to establish that he suffered prejudice as a result.

**2. <u>Ground 2: Failure to Call Samuels's Mother and Sister to Expose a Juror Bias</u>**

Samuels asserts that counsel failed to investigate and bring to the Court's attention that Juror 49 "engaged in an angry dispute with [his] mother and sister" just before the trial "that could have altered or influenced the verdict." (ECF No. 226 at 3.) Samuels alleges that he approached counsel with his mother about "the juror's prejudicial influences, even presenting an e-mail account of the conversation prior to the appeal." (*Id.*) The Government asserts that jury selection and juror bias are strategic decisions not subject to habeas relief. (ECF No. 252 at 3.)

The Sixth Amendment guarantees criminal defendants the right to a trial "by an impartial jury." U.S. Const. amend. VI. "Actual bias, also known as bias in fact, is 'the existence of a state of mind that leads to an inference that the person will not act with entire impartiality.'" *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012). "District courts possess broad discretion in excusing prospective jurors for cause on the basis of actual bias." *Id.* To obtain a new trial on a juror bias claim, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

The record demonstrates that Juror 49 revealed, at the end of the first day of trial, that she realized she knows Bruce and Bruce's wife, who is Samuels' sister, as well as Samuels and his family. Juror 49 further stated that she has not seen Samuels and had no interaction with him for a long time and that she knew him as Mikey, not Michael. (ECF No. 173 at 271-273.) When the Court inquired whether there was anything in Juror 49's relationship that would prevent her from following the Court's instructions on the law or listening to the evidence in this case fairly and impartially, she answered in the negative. (*Id.* at 272.) In response to the Government's motion to strike Juror 49, counsel argued that Juror 49 came forward as soon as she realized that there might be a matter of concern and stated that she intends to be fair and listen to the evidence. (*Id.* at 277.) Counsel stated that Juror 49 did not indicate that she was close to Samuels and that Samuels did not inform him "that he knows her in any way. So this is news to me, too." (*Id.*) Samuels' assertion that he approached counsel about Juror 49 issue prior to the appeal is consistent with counsel's representation

to the Court at trial that Samuels did not inform him that he knows Juror 49 in any way. Thus, counsel could not have been deficient for failing to raise an issue at trial, including failure to investigate and impeach Juror 49, of which he was not informed by Samuels and which he had no reason to know or to investigate. *Gibbs v. Adm'r New Jersey State Prison*, 814 F. App'x 686, 690 (3d Cir. 2020) (finding that "Gibbs' counsel could not be ineffective for failing to remove the jurors if he did not know about the allegations of bias until after trial," and even if he was told of the allegedly biased jurors during *voir dire*, "if counsel had concluded that keeping the jurors would benefit his client, his strategic decision could be seen by a 'fairminded jurist[ ]' as reasonable"). Nonetheless, Juror 49 indicated to the Court that she could be fair and impartial and they could follow the Court's instructions on the law. There is nothing in the record that would indicate that Juror 49 was an individual unsuitable to sit as a juror.

Samuels appears to claim that counsel was ineffective for failure to make a post-trial motion for an evidentiary hearing and a new trial based on Juror 49's alleged bias when Samuels and his mother approached counsel "presenting an e-mail account of the conversation prior to the appeal." In light of the broad discretion in excusing prospective jurors for cause based on the actual basis, *Mitchell*, 690 F.3d at 142, and the assurances provided by Juror 49, after the alleged angry dispute with Samuels's mother and sister, that she could follow the court's instructions on the law and listen to the evidence in this case fairly and impartially, the Court finds that Samuels failed to rebut the presumption that counsel's decision not to pursue that post-conviction strategy fell within an objectively reasonable standard of representation. Even assuming that counsel's failure to make a post-conviction motion for an evidentiary hearing and a new trial based on the alleged juror bias was deficient performance, Samuels did not carry his burden of showing prejudice*, i.e.*, that there is a reasonable probability that, but for counsel's failure, the motion would have been granted. *United States v. Westmoreland*, 712 F.3d 1066, 1080 (7th Cir. 2013) (finding that "[w]ithout a meritorious argument for a new trial, Westmoreland cannot show prejudice, and without prejudice, he cannot show that his counsel's performance was deficient in refusing to present his arguments").

To the extent that Samuels claims counsel was ineffective for failing to raise the issue on appeal, not having raised the issue at the trial level, no basis existed for counsel to raise it on appeal. *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 150 (3d Cir. 2014) ("The prudential rule that we not consider claims raised for the first time on appeal is at its strongest when a party presents an issue for the first time on appeal and thereby prevents the opposing party from introducing evidence relevant to that issue."); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

Considering the totality of the circumstances in this case, the Court finds that Samuels failed to rebut the presumption that counsel rendered effective assistance based on Ground 2 and to establish that he suffered prejudice as a result.

### 3. **Ground 3: Failure to Seek a Minor Role Reduction under U.S.S.G. § 3B1.2**

Samuels asserts that counsel did not seek a minor role reduction of his sentence under U.S.S.G. § 3B1.2 (ECF No. 226 at 4); rather, he only mentioned that Samuels "deserved a reduction because there was only one phone call in evidence against him," (ECF No. 270 at 2), but that was insufficient to satisfy the standard under *United States v. Headley*, 923 F.2d 1079 (3d Cir. 1991) The Government contends that "[m]otions to vacate advanced under § 2255 seeking application of Amendment 794[2] fail as a matter of law because such claims are not constitutional in nature, but rather technical." (ECF No. 252 at 3.)

Section 2D1.1 of the U.S. Sentencing Guidelines provides a base offense level decrease by two levels if "the defendant receives an adjustment under § 3B1.2 (Mitigating Role)," and the base level under the Drug Quantity Table set forth in section (c) is level 32. U.S.S.G. § D1.1(a)(5). Section 3B1.2 of the U.S. Sentencing Guidelines, Mitigating Role, provides an offense-level reduction by two levels for a defendant who "was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). Minor participant reduction applies to a defendant who plays a part in committing the offense that makes him "less culpable than most other

---

[2] The Government's contention appears to apply to Samuels' assertion, in Ground 3 of his motion, that Amendment 794, which amended the Commentary to § 3B1.2, is retroactively applicable to him. (ECF No. 226 at 4). However, the retroactive application of Amendment 794 is irrelevant to Samuels' claim of ineffective assistance of counsel related to his sentencing because Samuels was sentenced on May 27, 2014, (ECF No. 204), before Amendment 794 became effective on November 1, 2015.

participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 Commentary Application Note 5. "Since § 3B1.2 is ultimately concerned with the defendant's relative culpability, a district court should consider the defendant's conduct under the *Headley* factors in relation to the other participants." *United States v. Isaza-Zapata*, 148 F.3d 236, 239 (3d Cir. 1998). The *Headly* factors are "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *Headly*, 923 F.2d at 1084.

The sentencing transcript indicates that defense counsel argued that Samuels "is entitled to credit for a mitigating role," contending that, based on the trial evidence, Samuels "was only involved, allegedly, in October transaction," when he "just happened to answer the phone" that was registered "to a Brown Sugar," and "there is no evidence that he was any supervisor or leader of anyone or that he had an army of people or was part of an enterprise. So, I'm asking the Court to consider on the preponderance of the evidence that he did qualify for some minor role in relation to all the others, and that he be reduced the - - or given that two point decrease in accordance with the section I just mentioned, 2D1.1(a)(5), subsection (c)." (ECF No. 204 at 27-28.) The sentencing judge stated:

> 2D1.1(a)(5) applies where there is a mitigating role in the offense. None has been found here, and based on the Court's recollection of the testimony in this case, none is necessary. Certainly the testimony of Mr. Bruce, the cooperating witness, was important in this trial. It certainly outlined the role of the several defendants who were convicted. And with respect to Mr. Samuel, as the Court recalls, Mr. Samuel was on the phone and in a position that certainly didn't make it seem that he had a mitigating role. So the Court finds that the absence of a mitigating factor is not error. There is no mitigating role that the defendant had at least in the conduct that was charged here. Without some sort of mitigating role, then 2D1.1(a)(5), which would allow a decrease of two levels, is not appropriate. So that's denied.

(ECF No. 204 at 28-29.) In sentencing Samuels, the sentencing judge concluded:

> [I]t is hard to make a distinction between the role that Mr. - - that any of the defendants had here. So while on its face Mr. Bruce's call might suggest that Mr. Samuels is the person to whom you to turn to for direction and counsel in terms of the criminal conduct here, the Court can't say that that somehow puts him in a worse category than Mr. Marrero, who had a role in what was supposed to be a secure area of the airport, or Mr. Benjamin, who at the very

> outset of this matter is on the radio tape discussing this criminal conduct in its infancy.

(*Id.* at 59-60.) The record indicates that, contrary to Samuels' argument in his motion, counsel requested a minor role reduction; thus, counsel was not inefficient for failing to request a minor role reduction. *See United States v. Lores*, No. CR. 88-00278-06, 1995 WL 764577, at *4 (E.D. Pa. Dec. 20, 1995) (finding that, because counsel "raised this precise issue, the significance of petitioner's role in the crime, at the sentencing hearing," petitioner's claim was without merit). To the extent that Samuels contends in his objections that the argument made by counsel concerning a mitigating role is insufficient to satisfy *Headly*, that contention is not supported by citation to any legal authority. Even assuming that counsel's mitigating role argument was insufficient to satisfy *Headly* and that such insufficiency constitutes deficient performance, Samuel failed to establish that, in the circumstances of this case, there is a reasonable probability that, but for counsel's insufficient argument, the result of the proceeding would have been different. That is so because the court's findings indicate that the court considered the factors articulated in *Headly* before rejecting counsel's mitigating role argument.

Considering the totality of the circumstances in this case, the Court finds that Samuels failed to rebut the presumption that counsel rendered effective assistance based on Ground 3 and to establish that he suffered prejudice as a result.

4. **Ground 5: Failure to Advise of the Safety Valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2**

Samuels asserts that counsel failed to advise him "of the requisite criterias [sic] for qualification for the safety valve sentencing provisions," depriving him of an opportunity to mitigate his sentence. (ECF No. 236 at 12.) The Government contends that, apart from Samuels' allegations, the claim is not supported by any evidence. (ECF No. 256 at 2.)

The "safety valve" contained in 18 U.S.C. § 3553 (f) and incorporated in U.S.S.G. § 5C1.2, provides, in the cases of an offence under 21 U.S.C. §§ 841 or 846, "that a defendant shall be sentenced pursuant to the sentencing guidelines without regard to any statutory minimum sentence" if the five conditions listed in § 3553 (f) are met, including that

defendant truthfully provide to the government all information and evidence defendant has concerning the offense. *United States v. Sabir*, 117 F.3d 750, 751 (3d Cir. 1997).

The jury found, with respect to Samuels' convictions under Count 1 and Count 3, that each offense involved five kilograms or more of cocaine. (ECF No. 128.1) In sentencing Samuels, the court considered the advisory sentencing guideline range of 121 to 151 months, based on offense level 32, and a criminal history category of 1, as well as the sentencing factors enumerated pursuant to 18 U.S.C. § 3553, and sentenced Samuels to 121 months imprisonment on Counts 1 and 3, to be served concurrently. (ECF No. 204 at 55, 60.) The applicable statutory minimum sentence for each of Samuels' convictions pursuant to 21 U.S.C. §§ 846 and 841 is 120 months. 21 U.S.C. § 841(b)(1)(A)(ii). The safety valve, which allows a qualified defendant to escape applicable statutory minimum sentence, does not apply where, as here, the sentencing guideline range, 121-151 months, is higher than the statutory minimum of 120 months. *United States v. Batista*, 483 F.3d 193, 199 n.4 (3d Cir. 2007) (stating that "§ 5C1.2 only applies to defendants when their advisory Guidelines range is less than the mandatory minimum required by statute"); *United States v. Solis*, 169 F.3d 224, 226 (5th Cir. 1999) (finding that the district court erred in departing from the Guidelines pursuant to § 5C1.2 because "[i]n this case . . . the Guideline range is higher than the statutory minimum and, thus, § 5C1.2 does not apply"). Thus, counsel could not have been ineffective for failing to advise Samuels of the safety valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, because the safety valve did not apply in the circumstances of Samuels' case. *Gandy v. United States*, 538 F. Supp. 2d 726, 728–29 (D. Del. 2008) (finding that "[t]he safety valve was not an option because movant's guidelines range fell above the mandatory minimum term of 10 years").

## IV. CONCLUSION

For the foregoing reasons, the Court will adopt the Report and Recommendation and will overrule Samuels' objections. An appropriate Order follows.

**Date:** October 12, 2023          /s/ *Robert A. Molloy*
                                    **ROBERT A. MOLLOY**
                                    **Chief Judge**